McKEE *v.* GEORGIA COTTON OIL COMPANY.

*Simmons, C. J.*—This case is controlled by the decision of this court in *Standard Wagon Company* v. *Lowry*, 94 *Ga.* 614.   See also Reinhart *v.* Empire Soap Co., 33 Mo. App. 24; Chicago etc. R. Co. *v.* Blagden, 33 Ill. App. 254; Alexander *v.* Pollock, 72 Ala. 137; Phelps *v.* A. T. & S. F. R. Co., 28 Kansas, 165; 2 Shinn, Attach. & Garn. §555.                           *Judgment affirmed.*

May 19, 1896.  By two Justices.  Argued at the last term.

Garnishment.     Before Judge Turnbull.     Floyd superior court.   January term, 1895.

McKee sued Towers, and on April 28, 1893, had summons of garnishment issued to the Georgia Cotton Oil Company.   On December 25, 1893, said company answered denying indebtedness, etc.   The answer was traversed, and upon the trial of the issue thus made the judge directed a verdict for the garnishee.   Plaintiff moved for a new trial, which was denied, and he excepted.

Plaintiff introduced his execution against Towers, based on a judgment obtained September 27, 1893.   Also, the summons of garnishment, answer and traverse.     W. S. Cothran, for plaintiff, testified:   I am cashier of the garnishee; keep its books and have done so since April, 1891. Towers has charge of the mill of the garnishee at Rome, and it pays him $208.33 a month.   He was indebted to the garnishee $165.23 when the garnishment was levied. He draws money at any time.   I could not say he had any regular pay-day.   He can get money when he wants it. His salary is paid at the end of the month.   On April 28 he .owed the garnishee $165.23.   On June 1, 1893, his

account was balanced, and the garnishee owed him nothing. In the month of June his salary was $208.33, and he received that amount in June. On July 1st the account was balanced. He was indebted to the garnishee about all of June up to the 30th, until his account was credited with his salary. He did not become indebted any more in June. On June 4th he was indebted. On June 3d he was charged with $144.77. The next day he was charged with any money was on June 5th, charge of $8. The next day was June 10th, charge of $61. The next was June 23d, charge of $2.30. The next charge was July 3d. July 1, the account showed no entry. His account was balanced on June 30. On the 31st he drew $182.87. On August 1st his account was balanced; that means he owed nothing to them nor they to him. On September 1, it balanced. On September 2d there was a charge of $21.92; on the 6th a charge of $64.30; on September 25th he owed the garnishee $159.76. The amount credited to him on June 1st, his salary up to September 25th, was $624.99. He was credited with three months salary. He had no credit from the 1st to the 25th of September. He was charged with some money, but he was not credited until the 30th of September. He was charged with $784.75 from June 1st until September 25. His account on April 28th showed he was indebted to the garnishee $165.23. The next item charged to him was $95 April 29th; May 5th, $126.80; May 24th, $20; May 27th, $9; May 31st, 63 cents; June 3, $144.77; June 5th, $8; June 10th, $61; June 23d, $2.30; July 3d, $182.87; July 15th, $13.68; July 18th, $13; July 27th, $4.19; August 9th, $154.97; August 26th, $23.50; August 1st, $44.62; August 29th, $4.06; September 2d, $21.92; September 6th, $64.30; September 18th, $15.63; September 20th, $19.91; September 26th, $10 and $8. Towers was employed by the month, and can be discharged at the end of any month during the year that the garnishee may see fit. That is

the way I consider myself, and I am employed by the month. I could not say whether he made. a contract on the first of January for 1895. I do not think he did. On the 29th of April a credit was entered on his account for $208.33, his salary for April; and at the end of each succeeding month up to September, he was credited with a similar amount, his salary for such month. On June 30th he was credited by cash $774, on July 31st by cash $541, on August 31st by cash $18.82. The condition of his account just prior to April 28th, the month prior, he was indebted to the company. On March 31st he owed it $36.02. On March 16th he owed it $206.53. On June 30th he owed it $774, and paid it that amount to make his account balance. On July 31st he owed it $541, and paid it that amount for the same purpose. On August 31st he owed it $18.32, and paid it that amount to make it balance. The various items charged to him on his account were money he had collected from different parties owing the mill, and instructed me to charge to him. None of the items are for money paid out of the assets of the mill, or for money that check was given to him for. He would collect the money from various parties and report that he had collected it and hold it out and have me charge it to him. If at the end of the month he had collected and held out more than his salary, he would pay me the difference. (This explains the credits of cash.) Q. When you stated he drew money, you meant he got it in this way? A. I don't remember saying he drew money. I said he was charged with it, and that was what I meant to say. He was charged with it at his direction. His salary was due on the last day of the month, which was the garnishee's pay-day. None of the employees are employed except by the month, and their salaries are due at the end of the month and not before. Towers, as well as myself, is employed by the month and not by the year. There was no time from April 28th until September 25th that the gar-

nishee owed Towers anything. He was indebted to it during that whole time, except at the last of the month. I do not know of Towers having a contract with the mill. I think and believe he has no contract by the year. I charge any amount to him that he tells me to charge. He can take money when he wants it. If he were to make a check to me to be charged to him, it would have to be countersigned by me. If I had money in the mill and he were to come and want me to let him have it, I would do it. If after he collects the money and wants it he tells me to charge it to him, I do it. When he collected money outside, he reported it to me and I charged it to him and gave the parties from whom he collected it credit for the same. I think Mr. Towers was served with a summons of garnishment. None of the items charged to him were taken up by checks. The items for merchandise were entered on the day-book. I know that my salary was paid by the month.

*Reece & Denny* and *Ennis & Starling*, for plaintiff.
*Dean & Dean* and *Halsted Smith*, contra.