## 202. MUTUAL RESERVE LIFE INSURANCE COMPANY
### v. FOWLER.

1. As to assets in the hands of a garnishee, such garnishee is entitled to set off any indebtedness owed by the defendant in garnishment, and all such indebtedness. The question as to whether such garnishee is or is not indebted to the defendant, or whether such garnishee has assets of such defendant in its hands, should be ascertained by a comparison of their respective claims or accounts, and the judgment should be in accordance therewith.

2. A garnishee, if the debtor be indebted to him, has a lien on funds coming into his hands, or future indebtedness to the debtor on his part, superior to that of the plaintiff in garnishment. He is entitled to pay himself before he is required to collect for the benefit of others; and this applies to any past indebtedness due him by the defendant.

3. Consequently, to withdraw from the jury, by failure to charge thereon, the consideration of past indebtedness by the defendant in garnishment to the garnishee, and to confine the investigation, as to the state of the mutual accounts between the garnishee and the defendant in garnishment, to the period of time between the service of the summons and the date of the answer, was error; and the verdict and judgment should be set aside.

4. The purpose of the act of 1901 (Acts 1901, p. 55) was to reach indebtedness accruing between the service of the summons of garnishment and the answer, and to prevent evasions and subterfuges on the part of garnishees; but it does not intend to violate existing contracts or restrain the right to contract.

Appeal, from Fulton superior court—Judge Pendleton. December 21, 1906.

Argued February 27,—Decided April 11, 1907.

*Anderson & Anderson, L. W. Thomas,* for plaintiff in error.

*J. E. & L. F. McClelland, J. D. Kilpatrick,* contra.

RUSSELL, J. This case originated in a justice's court of Fulton county, where J. S. Fowler appeared as plaintiff, J. Cable Davis as defendant, and the Mutual Reserve Life Insurance Company as garnishee. A judgment was rendered against the main defendant, and upon a trial upon a traverse of the answer of the garnishee a judgment was rendered against it. The case was appealed to the superior court, and upon a trial before a jury a verdict was rendered against the garnishee for $133.15, being the principal and interest of the debt due to Fowler by Davis. A motion for new trial having been denied, the case was brought to this court for review. In addition to the allegation of error that

the verdict is contrary to law and the evidence, the plaintiff in error avers, in the third ground of the motion, that the court erred in admitting certain evidence; in the fifth, that the verdict is contrary to an instruction of the court; and in the fourth and sixth grounds it excepts to certain portions of the charge of the court. The seventh and eighth grounds of the motion specify wherein (according to the contention of plaintiff in error) the verdict is contrary to evidence; the plaintiff in error insisting that the evidence shows that the company had not waived any stipulations of its contract with its agent, Davis, with reference to the forwarding of moneys to the home office of the company, and therefore the garnishee in making its answer had the right to offset any amount due to it by Davis. None of the several grounds of the motion for new trial need be considered except in so far as they present or illustrate the controlling issue in the case at bar, which is the proper construction of the act of 1901 (Acts of 1901, p. 55), which amended the existing garnishment laws of this State. This act is as follows: "An act to amend the garnishment laws of this State, so as to make subject to the lien of garnishment all indebtedness of the garnishee to the defendant, accruing after the date of the service of garnishment; and for other purposes. . . Be it enacted by the General Assembly of the State of Georgia, and it is hereby enacted by the authority of the same, that from and after the passage of this act, whenever a summons of garnishment is served on any person, and such person, after the date of such service, becomes indebted to the defendant, such subsequent indebtedness immediately upon its accruing shall become subject to the lien of such garnishment, and no payments made by the garnishee to the defendant, or to his order, after the date of the service of garnishment, shall defeat the lien of such garnishment. The service of a summons of garnishment shall in all cases operate as a lien on the garnishee's indebtedness, at the date of the service, and also upon all future indebtedness accruing up to the date of the answer; and such lien shall not be defeated by any payments of the garnishee, or overdrafts by the defendant, or other arrangements between the defendant and the garnishee."

As appears from the record, the Mutual Reserve Fund Association, now the Mutual Reserve Life Insurance Company, on July 1st, 1901, made a contract with J. Cable Davis, of Atlanta, Geor-

gia, appointing him its general agent. Among other things the contract contains the following stipulations: "The association may offset against any claim for compensation, under this agreement, any amounts payable to other agents on policies secured under this or any other agreement, and any debt due by said party of the second part to said association." According to the undisputed evidence, when the company was served with summons of garnishment on August 27, 1903, Davis owed the company $9,941, after deducting $1,113.57, which Davis was entitled to as a credit between the date of the summons of garnishment and the filing of the answer on September 14, 1903; this amount was due without charging Davis with the additional amount of $1,302.16, which he had become indebted to the company between August 27 and September 14; and allowing Davis credit for $250 a month office expenses from June, 1901, to September 14, 1903, to which Davis was entitled, it would still leave Davis indebted to the insurance company both when the garnishment was served, August 27, 1903, and on September 14, 1903, the date the company made its answer, more than $3,000. Between the service of the summons of garnishment and the answer Davis earned, under his contract, about $190 more than he drew out. This was an amount more than enough to pay the debt of the garnishing creditor, and the jury by their verdict applied it to the payment of this debt, although the evidence showed, without contradiction, that Davis was deeply indebted to the company and that by its contract the company had the right to apply this overplus of earnings to the diminution of Davis's debt to itself. The verdict made the garnishee pay Davis's debt to Fowler, despite the fact that Davis was indebted to the company and despite the provision of the contract that the company might set off any indebtedness due it, because of the fact that during the time intervening between service of the summons and the garnishee's answer Davis had drawn (during that period), under the contract, more than he had earned,—an amount more than was necessary to satisfy the garnishing creditor's demand. The real question in the case, therefore, is whether the contract or the garnishment shall have precedence. We do not think the garnishment can affect the prior contract. The contract antedated the summons of garnishment by more than two years; and if it be genuine and speak the truth, it was not entered into with a view

of evading the provisions of the act of 1901, because the contract was made before the passage of the act. It is not attacked as being invalid or fraudulent. On the contrary the plaintiff's recovery was based upon an indebtedness claimed to be due by the plaintiff in error, as garnishee, to plaintiff's debtor; and the evidence by which it is sought to show that the company owed Davis depends entirely upon the contract as its foundation. It is unnecessary to hold that it was not the intention of the legislature, in the passage of the act in question, to impair the obligation of existing contracts. In the absence of an explicit expression upon the subject the contrary would be presumed.

1. This being true, and it being undisputed in the evidence that at the time of the service of the summons of garnishment Davis was indebted (even deducting the allowance for office expenses) to the garnishee, the insurance company, the question arises whether Davis earned more in the employment of the company between the date of the service of the summons of garnishment and the date of the garnishee's answer than was necessary to discharge his indebtedness to the company. This court has already held, in *Holmes v. Pope,* 1 *Ga. App.* 338 (58 S. E. 281), that, "as to assets in the hands of a garnishee, such garnishee is entitled to set off any and all indebtedness owed by the defendant in garnishment. The question as to whether such garnishee is or is not indebted to the defendant, or whether such garnishee has assets of such defendant in his hands, should be ascertained by a comparison of their respective claims or accounts, and the judgment should be in accordance therewith." If the contract was valid and Davis was indebted to the garnishee at the time of the service of the summons of garnishment, it is clear that the garnishee would have the right to apply any sums which it might thereafter owe Davis, or any assets of his lawfully coming into its hands, to the extinction of his indebtedness to the company before applying it to any other demand.

2. But it is insisted by counsel for defendant in error that the company had, by a long course of dealing (in which it had allowed Davis to keep moneys collected by him and retain his fees and commissions instead of forwarding them to the company) waived and abrogated the stipulations of the contract upon the subject, and that therefore the correct basis of ascertaining the true state

of accounts between Davis and the company, so far as the garnishment law is concerned, is to ascertain whether Davis earned more during the intervening period of time, which elapsed from the service of the summons of garnishment and the garnishee's answer, than would be sufficient in amount to pay the plaintiff's. demand. This leaves out of sight the admitted fact that the defendant Davis owed the garnishee several thousand dollars at the time that the garnishment was served, and does not take into consideration the question whether the amount that the company may have become indebted to Davis thereafter and before its answer exceeded Davis's prior indebtedness to the company. The true rule is that a garnishee, if the debtor be indebted to him, has a lien on funds coming into his' hands, or future indebtedness to the debtor on his part, superior to that of the plaintiff in garnishment. He is entitled to pay himself before he is required to collect for the benefit of others; and this applies to any *past* indebtedness due him by the defendant.

3. We think that the following instruction of the court was erroneous, because it confined the investigation of the jury entirely to the narrow limits alluded to above. "Did the insurance company or garnishee become indebted to the defendant Davis between August 27th and Sept. 14th, 1903? If they did, and they paid the sum to Davis between August 27th and September 14th, you will find their answer is not true." The latter portion of the instruction is sound law; but the question in the first sentence, without explanation, was likely to mislead the jury into the belief that they were confined in their investigation to the period mentioned. It should have been explained in this connection that what the court meant (as he doubtless did) by the company becoming indebted to Davis was, being indebted after taking into consideration the state of their mutual accounts at the time of the service of the summons of garnishment. It is true that in another portion of the charge the learned trial judge correctly instructed the jury upon this point; but judging from the verdict rendered upon undisputed testimony, the jury must have been misled by the intimation conveyed in the question, which had the effect of withdrawing the consideration of Davis's past indebtedness to the insurance company. And in such a case as this, to withdraw from the jury, by failure to charge thereon, the consileration of past

indebtedness by the defendant in garnishment to the garnishee, and to confine the investigation as to the state of the mutual account between the garnishee and the defendant in garnishment to the period of time between the service of the summons and the date of the answer, was error. If the jury were not misled by this portion of the judge's charge, the verdict was wholly contrary to other portions in which they were clearly and correctly instructed; and for that reason a new trial should have been granted.

4. To give to the act of 1901 (Acts 1901, p. 55) the construction placed thereon by learned counsel for defendant in error would not only be destructive of the plain contract in this case, but would extend the statute far beyond the manifest purpose of the legislature in its enactment. A cardinal rule in the construction of a statute is to ascertain the legislative intent by a consideration of the old law, the evil sought to be remedied, the remedy provided, and the reason therefor. It has been further held that the intention of the legislature is to be deduced from a view of the whole and every part of the statute taken together and compared. 12 Whart. R. 332. Another fundamental principle laid down by Judge Warner in *White* v. *Ross,* 40 *Ga.* 341, is that "all laws should be made to commence in futuro," and in the absence of a provision to the contrary they will be held only to prescribe for the future. Construing by these rules the act from which we have quoted the caption and first section, we have no difficulty in reaching the conclusion, that, as to assets in the hands of a garnishee, such garnishee is entitled to set off any and all past indebtedness due him by the defendant in garnishment. The question as to whether such garnishee is or is not indebted to the defendant, or whether such garnishee has assets of such defendant in its hands, should be ascertained by a comparison of their respective claims or accounts (the garnishee not being allowed to increase the indebtedness to himself, for the purpose of this comparison, after the service of the summons), and the judgment should be in accordance therewith.

As a matter of common knowledge it was frequently true that before the passage of the amending act of 1901 creditors defeated the process of garnishment and rendered it inoperative, or attempted to do so, by making advance payments to their employees or by accepting orders given by defendants in garnishment after the serv-

ice of the summons of garnishment and before their answers. This was the evil that the legislature sought to reach and uproot, and this appears from the reference to these devices in the act. The remedy proposed was the act of 1901, which was designed to thwart the subterfuges theretofore employed to evade the collection of debts due to defendants in garnishment by garnishees. Considering the caption and the first section, all of the parts, together, it is plainly to be seen that this was the sole purpose of the act. Both in the caption and in the act itself a lien is declared to which all indebtedness of the garnishee to the defendant, *accruing* after date of the service of the summons of garnishment, shall be subject. The language employed in the act further strengthens and enforces the view that it is to future indebtedness that the law applies: "whenever . . such person, after the date of such service, *becomes indebted* to the defendant, such subsequent indebtedness, immediately upon its *accruing,* shall become subject," etc. Under the evidence in this case the garnishee never did *become indebted* and no debt accrued between the service of the summons and the date of the answer. It is unnecessary for us to discuss the fact that Davis drew more from the company than he paid on his indebtedness. Such a modus operandi might be "an arrangement" between the defendant and the garnishee. If so, it could not be allowed to defeat the garnishment. But in this case the fact that it was such an "arrangement" as is referred to in the act was not shown, because, if Davis's whole earnings for the period between the service of the summons of garnishment and the date of the answer be applied to the payment of the indebtedness existing prior to the garnishment, and the amounts drawn out by him had likewise been deducted and used to diminish his indebtedness instead of to increase it, the evidence still shows him to be in the debt of the insurance company and therefore no indebtedness on the part of the garnishee to Davis has *accrued so as to* be subject to the lien,—the garnishee has not become indebted to *Davis.* There was, therefore, no competent evidence to sustain the verdict of the jury who found that the company had become indebted to Davis.

We are not called upon at this time to pass upon a judgment in a case where there was no evidence that there was an anterior indebtedness. In such a case it would be for a jury to say whether

the moneys retained by Davis were moneys which under the contract he was entitled to retain, and which had never gone and might never go into the custody and possession of the garnishee (although it might be Davis's duty to remit such funds and have the company make the settlement), or whether the money was the property of the company constructively in its hands because Davis is its agent, and certain sums being due,. or having *become* due after service of summons of garnishment. But in this case under no possible view of the evidence can it be claimed that the garnishee has ever become indebted to the defendant in garnishment. Therefore no lien could attach, and the verdict was without evidence to support it. For that reason the judgment should have been set aside and a new trial should have been granted.

It is wholly immaterial to the present discussion whether the company waived any of its rights under the contract with relation to the collection of the premiums, because the evidence showed that it has never owed Davis anything at any time, even if Davis might have owed it less if it had required the literal fulfillment of the contract. There is nothing ruled in this case which is antagonistic to the ruling in *Odum* v. *Ry. Co.,* 118 *Ga.* 794. In the *Odum* case Judge Cobb, delivering the opinion, says: "The purpose of the act was evidently to alter the rule which had been laid down by this court, in several cases, to the effect that, even after a summons of garnishment had been served, no lien would attach upon an advance payment for services to be performed in the future." And he cites the cases of *Standard Wagon Co.* v. *Lowry,* 94 *Ga.* 614; *McKee* v. *Ga. Oil Co.,* 99 *Ga.* 107; *Wilson* v. *Georgia R. Co.,* 103 *Ga.* 578, and the cases cited there. And the court unanimously concur in the opinion that it was not the intention of the legislature to hold an employer, who had advanced money to his employee prior to service of summons of garnishment upon him, liable to pay to a garnishing creditor that portion of the amount advanced which was unearned at the date of the service of the summons of garnishment. This construction, which would force the garnishee to collect for the garnishing creditor before he is permitted to procure the repayment of a just debt due to himself by the common debtor, is declared to be too unreasonable and arbitrary to be adopted, since the language of the act construed as a whole does not demand such interpretation. So far as appears to

us, the difference between the case at bar and the *Odum* case is very slight so far as the facts are concerned. In the present case, as in *Odum's* case, the garnishee owed the defendant in garnishment nothing when served. In the *Odum* case McLaughlin owed the railroad company for unearned salary which had been advanced prior to the service of the summons, just as Davis in the present case owed the insurance company for unearned fees, commissions, and salary which had been advanced or which he had collected. The advancement or indebtedness in each case was reduced by earnings of the employee before the answer, but in both cases the employee was still indebted to the garnishee. In the present case the debtor had increased his indebtedness, but, so far as appears from the evidence, this was not with the garnishee's consent, but rather in spite of the company and the contract. We hardly think this slight difference in the two cases should make the reasoning in the *Odum* case inapplicable to this.

*Judgment reversed.*