## 211.  SINGER SEWING MACHINE COMPANY *v.* SOUTHERN GROCERY COMPANY.

1. The situation which the garnishing plaintiff occupies in respect to the garnishee can be no better than that which the defendant himself occupies in respect to the garnishee. If the defendant himself, suing the garnishee, could not get a judgment against him, the garnishing plaintiff can not get a judgment against the garnishee. The creditor may stand in his debtor's shoes by means of garnishment, but he gains no additional privileges.

2. The act of 1901 (Acts 1901, p. 55), creating a lien on all future indebtedness of the garnishee to the defendant accruing up to the date of the answer, was only intended to keep garnishees from evading the law. For the reasons stated in the first headnote, it is not intended to restrain the right of parties to contract.

3. Consequently, in a case where it appeared by the undisputed evidence, that, under a contract operative more than a year before an attachment was sued out, the defendant sold sewing machines for the garnishee, and that the contract relations were that the defendant used his own horse and wagon, paid his own taxes and expenses, and deducted his commissions before remitting the weekly balances, not being indebted or responsible to the garnishee for any proceeds of the sale except the portion due by the contract, the garnishee was not at any time indebted to such debtor, and was not subject to process of garnishment. Consequently, where a judgment was rendered against such

garnishee and exception was taken thereto by certiorari, to dismiss such certiorari was error.

Certiorari, from Chatham superior court—Judge Cann. December 29, 1906.

Argued February 27,—Decided April 11, 1907.

*Stubbs & Chapman, Hooper Alexander,* for plaintiff in error.

*Wilson & Rogers,* contra.

RUSSELL, J. Exception is taken to the dismissal of a certiorari. The Southern Grocery Company sued out attachment against Johnson, who resided in South Carolina, and served a garnishment on the Singer Sewing Machine Company. The latter answered not indebted, and the former traversed the answer. On the trial of the traverse the justice held that the garnishee was liable, and on certiorari the presiding judge agreed with him and dismissed the certiorari.

The defendant in attachment sold sewing machines in South Carolina for the plaintiff in error, under a contract which was executed and had been operative more than a year before the attachment was sued out. The contract relations between Johnson and the Singer Company were as follows: The company shipped machines to him, and he used his own horse and wagon, paid his own taxes and expenses, leased and sold the machines for cash and on credit at prices fixed by the company, and made weekly reports to the company on blanks furnished by it to him. For his services he was entitled, under the contract, to two commissions: (1) A selling commission of twenty-five per cent. of every machine sold; if a cash sale, he took out his twenty-five per cent., and with this weekly report sent the balance to the Savannah office. The company never saw or handled the money, but by virtue of the contract Johnson retained it. If a credit sale, he retained all the money he collected until he had his twenty-five per cent.; the balance he sent to the company as its share of the transaction. (2) A remitting commission of twenty-five per cent. of such part as he might collect of the company's seventy-five per cent. of the proceeds of his leases and sales, which was due to him one week after he had remitted his collections for the week; e. g., if on Saturday, February 16, he reported that he had collected $10 for the company, he sent it, less his commission for the preceding week, with

his report, and on the 23d he was entitled, under his contract, to take out twenty-five per cent. or $2.50, from that week's collections, before making his remittance to the company. Copies of all of Johnson's reports, for the period claimed to be affected by the garnishment, appear in the record. His selling commissions from the date of the service of the summons to the date of answer, over six weeks, amounted to $23. This never passed out of Johnson's hands, but he retained it by right of his contract. Under the evidence his remitting commission amounted to $14.13, made up of six items for the six weeks, varying in amounts from fifty-one cents to a few dollars. His contract allowed, and the evidence showed that at the end of the week, when he made up his report, he took out of the amount collected his commission for the previous week, and sent to the company the difference; so that as a matter of fact the company never did handle any of the defendant's money. It kept no books, had no charges for or against him, and paid him no salary.

1. From the above correct summary of the evidence we are satisfied that the certiorari should not have been overruled; for by no construction of the contract could it be said that the company owed the defendant more than the amount of the remitting commission, viz., $14.13. We are of opinion that no judgment should have been rendered against the company. We have endeavored to declare the intention of the legislature in the passage of the act of 1901, in *Mutual Reserve Ins. Co.* v. *Fowler,* ante, 537. The garnishment law was not intended to restrain the right of parties to contract. The act was only intended to keep men from evading the law. So far as appears, the contract in this case was made in good faith, and had been in operation for more than a year before this garnishment was issued. It is not even suggested that it was made with any purpose to evade the law. Johnson was simply a salesman on commission, with the contract right to deduct his commissions and send the balance to the owner of the goods. We do not think that a wholesale merchant in Atlanta, who ships goods to a retailer to sell on commission, owes the retailer money; or that a farmer, who sends produce to a broker or commissioner to be sold on commission, owes, by reason of that fact, the latter the amount of the commission. In such cases neither the wholesale merchant nor the farmer will ever *owe* the commissions. If there is no sale,

there will be nothing due. If there is a sale, the commissions are deducted from the collections and are paid by the purchaser; and so far as the vendor and his agents are concerned, it is a cash transaction. From the nature of the case there can be no debt, for the commission man is paymaster and pays himself, whether the sale be for cash or on time. A controlling reason why there should have been no judgment against the garnishee in this case is that the debtor, Johnson, could not have obtained a judgment against the garnishee upon the same demand. Generally a judgment creditor may acquire by garnishment a control over the choses in action of the defendant, and thereby in effect bring suit against his debtor's debtor. But the situation which the garnishing plaintiff occupies in respect to the garnishee can be no better than that which the defendant occupies himself in respect to the garnishee. If the defendant himself, suing the garnishee, could not get a judgment against him, the garnishing plaintiff can not get a judgment against the garnishee. The creditor may stand in his debtor's shoes by means of garnishment, but he gains no additional privileges. *Holmes* v. *Pope,* 1 *Ga. App.* 343 (58 S. E. 281). The garnishee's rights were defined by the contract with Johnson. The garnishing creditor could not, by garnishment, acquire greater rights. The company could not have ordered Johnson to send all he collected, or to send in the commissions they had contracted to pay. They could not have enforced such order by law, for the contract would have prevented it.

As ruled by the Supreme Court in *Butler* v. *Billups,* 101 *Ga.* 103, "A plaintiff by garnishment can not place himself in a superior position as regards a recovery than is occupied by the principal defendant. The garnishee's liability is measured by his responsibility and relation to the defendant; he can be charged only in consistency with the subject of his *contract* with defendant." To the same effect is the opinion in *Hoskins* v. *Johnson,* 24 *Ga.* 628, in which it is said: "If the case be one in which the defendant himself, if suing the garnishee, could not get a judgment against the garnishee, it is one in which the garnishing plaintiff can not get a judgment against the garnishee. This must be manifest." Under the contract Johnson could not have sued the company for his commissions; for it was his right to retain them, and *they* were never intended to reach the company. The same ruling

as made in the cases above cited was announced in *Tim* v. *Franklin,* 87 *Ga.* 95, and *Bates* v. *Forsyth,* 69 *Ga.* 365.

2. The contract in this case, strictly speaking, did not create the relation of employer and employee. It is therefore doubtful if the case comes within the scope of the act of 1901, or is at all affected thereby. As we have explained, in *Mutual Reserve Life Insurance Co.* v. *Fowler,* supra, the purpose of that act is to prevent evasions of the garnishment law, and it was specially intended to correct an evil supposed to exist among a particular class. The relation between the defendant Johnson and the garnishee was that of a salesman on commission. He was, in a sense, a traveling commission merchant who handled only one kind of goods, and who, by contract, could sell for the manufacturer, the garnishee, only at a fixed price. Whatever it was, the relation was fixed by the contract. The evidence did not show that the purpose or effect of the contract was to evade process of garnishment. And as the garnishee could not sue for any portion of these commissions, because it would be in violation of the contract, for the same reason the plaintiff can not reach them by garnishment. The act of 1901 (Acts of 1901, p. 55), while creating a lien on all future indebtedness of the garnishee to the defendant accruing up to the date of the answer, was only intended to keep garnishees from evading the law. It was never intended to restrain the right of parties to contract, nor to interfere with or abrogate their contracts when made, unless it appears that such contracts were made to evade or nullify the process of garnishment.

3. We have already alluded to the terms and nature of the contract. From the record it appears, without dispute, that the contract was operative more than a year before the attachment was sworn out, and perhaps even before the debt which Johnson owes the Grocery Company was created. Therefore the contract could not have been made to evade or avoid this garnishment. The defendant sold sewing machines for the garnishee, but the sales were strictly on commission. He used his own horse and wagon, paid his own taxes and expenses. He deducted his commissions before remitting the weekly balances. These commissions were not a debt due by the company to him. The moment they came into existence they were his own. They never had and never could belong to the garnishee. He could have given them to a purchaser

of a machine by reducing the price of a machine that much. It was no concern of the company. Under his contract he could not become indebted or responsible to the company for any portion of the proceeds of a sale (or of all his sales) except that portion due them by the contract.

Under the contract and the evidence the garnishee was not indebted to the defendant at the time of the service of the summons of garnishment, nor did any debt accrue between the service of the summons and the date of the garnishee's answer. Consequently the certiorari should have been sustained, and to overrule it was error.            *Judgment reversed.*