# CHARLESTON.

## Bowling v. Bluefield-Graham Fair Association
### (Tri-State Fair Association, Garnishee).

Submitted April 15, 1919.    Decided April 22, 1919.

1. Garnishment—*Rights of Garnishee—Set-Off.*
    The rights of a plaintiff against a garnishee are the same and can rise no higher than the rights of the principal debtor against him, and the garnishee may set off against such plaintiff any debt or liability he would be entitled to set off against his creditor. (p. 45).

2. Landlord and Tenant—*Eviction—Recovery for Improvements.*
    If a lessee after entering is evicted or his lease terminated prematurely by the superior right or title of some third person, the lessor is liable to the lessee, upon his covenant of peaceable and quiet enjoyment, for a reasonable proportion of the expenses incurred by him in making permanent improvements contemplated by the contract or necessary to put the property in condition to be enjoyed by the lessee, depending on the time the lease has run, if the property was leased for a particular purpose or the lessor understood at the time of making the lease the use which the lessee intended to make of the premises. (p. 46).

3. Garnishment—*Rights of Garnishee—Set-Off—Claims Under Lease.*
    As an exception to the general rule that the rights of the plaintiff and garnishee are fixed as of the date of the service of process, if the liability of a lessee to the principal defendant sought to be charged with the plaintiff's debt arises out of a particular lease contract, the lessee is entitled to offset against the plaintiff's claim any debt or liability, legal or equitable, against his lessor which has or may accrue to him under the lease, if matured and asserted before judgment against him as such garnishee. (p. 46).

Error to Circuit Court, Mercer County.

Action by Lowery G. Bowling against the Bluefield-Graham Fair Association and the Tri-State Fair Association, garnishee. Judgment adverse to garnishee was rendered, and it brings error.

*Reversed, garnishment proceedings dismissed.*

*Sanders, Crockett & Kee,* for plaintiff in error.
*James S. Kahle,* for defendant in error.

MILLER, PRESIDENT:

The Tri-State Fair Association, summoned as garnishee, seeks reversal of the judgment below against it, by which it was denied the right to set off or recoup in damages against the balance of rent found due from it as lessee, to the Bluefield-Graham Fair Association, its lessor, the judgment debtor, the cost of the permanent improvements placed by it upon the leased premises in accordance with the terms of the lease.

On the trial of the issue the court found that after allowing the respondent credit for $210.00 paid to the Bank of Graham for interest on bonds secured by a deed of trust on the property, and $125.00 shown to have gone into the construction of a building erected on the fair grounds, there remained due to the judgment debtor on account of the rent accrued under the lease for the second year the sum of $1160.00, and the judgment thereon was that palintiff recover of the Tri-State Fair Association, garnishee, the sum of $637.00, the amount of his judgment against the Bluefield-Graham Fair Association, principal debtor, with legal interest thereon from June 8, 1918, the date of the judgment against it as garnishee, and the costs of the suit against said lessor, amounting to $90.65, the amount of the judgment against it to be credited upon the amount found due on the rent aforesaid. The cost of the improvements which the lessee sought to set off against the claim of its lessor was the sum of $2113.84.

The lease under which said rental accrued was dated April 1, 1916, covered the fair grounds of said lessor, and was for the term of five years from January 1, 1916, and provided that the rent of $1500.00 reserved should be paid on the first day of September of each year, which it was agreed should be used to pay the interest annually on $25,000.00 of the first mortgage bonds of the lessor. And among a number of other covenants and agreements therein, was the covenant in substance and effect that the lessee with the consent of the lessor might make improvements on the grounds and buildings or erect new buildings, but that all improvements should be paid for out of the gross receipts from the business, after

the appropriation of said rental of $1500.00 to the payment of the interest on the bonds, before the division of profits between the parties as stipulated in the lease. And another provision thereof, contained in the eleventh paragraph, and bearing on the rights of the parties to this controversy, was that if the lessor should violate any of the provisions of the lease so as to cause a premature termination thereof, it should be rendered liable to the lessee for the damages sustained thereby; and there was a similar provision in favor of the lessor against the lessee for damages for any breach of the covenants on its part.

The objects and purposes of the lease, as proven and plainly evidenced by provisions of the instrument, were that the lessee should have the right to conduct a country fair, and exhibitions and amusements of different kinds for which the premises were adapted, the net profits after payment of the annual rental to be divided in the proportions of 50% to the lessor, the residue to the lessee.

The answer of the garnishee and the proof was that on December 1, 1917, the whole of the leased premises, situated partly in Virginia and partly in West Virginia, were allowed to be sold away from the lessor and lessee at public auction under judicial proceedings against said lessor and purchased by a third party, thereby terminating the lease in breach of the covenants of the lessor and depriving the lessee of its rights under the lease. The evidence shows, as was anticipated, that the expense of operating the property, including the rental for the first year, amounted to several thousand dollars more than the gross receipts, and that for the second year, but decreasing in amount, they also exceeded the income from the business. The belief and expectation of the parties were that the business would develop and increase with the life of the lease, so that in the subsequent years there would be a profit to both parties in the operation of the property, and the result of the business for the second year seemed to justify these anticipations. There seems to have been no controversy as to the actual amount expended on the property by the lessee, and little if any evidence that

the same was done without the approval of the lessor as provided in the contract.

It is conceded on both sides that but two questions are presented for decision: first, whether the garnishee has a valid claim against the judgment creditor; and, second, if it has, has it the right to set it off against the judgment of plaintiff in this action?

On the first question our conclusion is that the claim of the granishee is well founded on fact and upon correct legal principles. As indicated, the amount expended is not seriously controverted. The evidence shows that in the first year of the lease $1363.97 was spent in such improvements, and in the second $749.87, and in all during the two years the lease ran, $2113.84. But the lessee had the benefit of the improvements made in the first year for both years; it also had the benefit of the improvements made during the second year for that year, and ought, we think, to be charged with a reasonable proportion of the costs of these improvements for the time it had the use thereof. A fair charge, we think, would be two-fifths of the amount expended in the first year and one-fourth of the amount expended in the second year. If adjusted in this way, the lessor company would owe the lessee a balance of $818.37 on account of the expenditures of the first year, and $562.41 of the amount expended in the second year, or a total of $1380.78, to which should be added the sum of $210.00 paid under the contract, out of the second year's rent, to the Bank of Graham on account of the interest on the bonds of the lessor secured by mortgage on the property, making a total of $1590.78, a sum in excess of the rent accrued for the second year.

But counsel for plaintiff contends that the amount of these expenditures is not the true measure of damages for the breach of defendant's contract; that though special the true measure of its damages is the value of the unexpired term of the lease, which in this case, owing to the showing of losses in the operation of the property, was merely nominal, and that no substantial damages are shown. But had not the lessee the right to the benefits of the full term and to

the use of the improvements made in an enterprise which the parties anticipated would be profitable in the latter years thereof; and whether profitable or not, did it not have the right to the use of the improvements as a necessary equipment in minimizing its losses, if any, in the operation of the property, under a contract binding it to pay rent for the full term? We think this to be the true construction of the contract.

What then is the law of the contract? The rule of our decisions and the law everywhere is that the rights of a plaintiff against a garnishee are the same as and can rise no higher than the rights of the principal debtor, and that whatever rights of set off or counter claim the garnishee has against him, he may offset against his creditors. *Crane v. Standard Lumber Mfg. Co.,* 77 W. Va. 617; *Harrison B. Schuler* v. *I. N. Israel et al.,* 120 U. S. 506; *Viterbo* v. *Friedlander,* Id. 707; *Rolling Mill Co.* v. *St. Louis Ore & Steele Co.,* 152 U. S. 596; *Singer Sewing Machine Co.* v. *Southern Grocery Co.,* 2 Ga. App. 545, 59 S. E. 473; 12 R. C. L. 830 et seq. In *Taylor* v. *Bradley,* (N. Y.) 100 Amer. Dec. 415, 426, the court says: "To my mind, the only rule which can be prescribed, and the only rule which will do justice to the parties, is, that the plaintiff is entitled to the value of his contract. He was entitled to its performance; it is broken; he is deprived of his adventure; what was this opportunity which the contract had apparently secured to him worth? To reap the benefit of it, he must incur expense, submit to labor, and appropriation of his stock. His damages are what he lost by being deprived of his chance of profit." And in *Armitage-Herschel Co.* v. *Barnet,* 109 Minn. 468, 27 L. R. A. (N. S.) 811, it was held that the lien acquired by the garnishor is, in the absence of some special and superior right in plaintiff, subject to all equities existing between the garnishee and the defendant.

But upon what legal or equitable principles may we say that the garnishee in this case is entitled to the cost of his improvements less the value of the use he had thereof? We have observed that the parties to the contract anticipated a breach of the contract for quiet enjoyment by a specific cove-

nant in the contract to pay damages. But independently of such specific covenant the law is that where, as in this case, the lessor at the time of making the contract understood the use which the lessee intended to make of the premises, and knew that alterations and repairs were required, and they were made pursuant to his understanding, he is liable to the lessee evicted by a third person having a superior right or title, for the necessary expenses in making such alterations and repairs. *Wolf* v. *Meguntz*, 184 Mich. 452, Ann. Cas. 1916D, 1146, and elaborate note citing numerous cases supporting this proposition; *Friedland* v. *Myers*, 139 N. Y. 432. This rule has special application, we think, to this case where the improvements were in the nature of permanent improvements, and which must inure to the special benefit of the lessor at the end of the lease.

On the second proposition the defendant in error insists that his rights became fixed as of the date of the service of the process of garnishment in August 1917, and that they cannot be affected by conditions accruing subsequently, in this case the subsequent sale and disposition of the property in December of that year. The general rule thus invoked is true, particularly where applied to acts of the garnishee in an effort to defeat the right of the plaintiff against the principal defendant, in fraud of plaintiff's rights. But by the great weight of authority and upon principles of reason and justice there is a well founded exception to the general rule, that where the claim and rights of the garnishee arise out of the very contract upon which his liability to the principal debtor has accrued, he may assert those rights at any time before final judgment against him. And in cases of insolvency or bankruptcy of the principal debtor it is held that a bank or other creditor may set off against the account of the debtor unmatured notes or debts held at the time of the service of the process of garnishment. *Wunderlich* v. *Merchants National Bank*, 109 Minn. 468, 18 Amer. & Eng. Ann. Cases, 212, and note; *Rolling Mill Co.* v. *Ore & Steel Co., supra; Lannan* v. *Walter*, 149 Mass. 14. There are decisions to the contrary, but we are disposed to follow those which appeal to us as best founded on reason.

We have examined the record and find no merit in the preliminary question raised and relied on that the bill of exceptions does not sufficiently identify the lease or contract introduced in evidence by the plaintiff himself.

For the foregoing reasons we reverse the judgment against the plaintiff in error, and dismiss the garnishment proceedings against it, with costs in this court and in the circuit court about its defense in this behalf expended.

*Reversed, garnishment proceedings dismissed.*