#### 21493.  NORRIS v. THE STATE.

DECIDED JULY 14, 1931.

*Hugh E. Combs,* for plaintiff in error.
*M. L. Felts, solicitor-general,* contra.

LUKE, J. John Daniel Norris was convicted of manufacturing spirituous liquors. His exception is to the judgment overruling his motion for a new trial.

Alwine Dye, sworn for the State, testified in substance as follows: "I know the defendant. . . I know there was smoke there and some barrels. That was on the second Sunday in May, and it was about 2 o'clock. . . That place was in Warren county. There were about ten people at that place. When they saw me Mr. Norris and a bunch of them jumped in the gully. . . Mr. Raley and Enoch came to where I was. . . I went over there to see how much timber there was. . . As soon as I got across the branch the path turned to where the smoke was. . . I heard a barrel make a fuss, and I turned and looked and saw a bunch of barrels and a bunch of men. . . Mr. Norris was in that crowd that jumped in the gully, and another white man or two. . . When I went back there it was a month or so after that. It was a gully running this way, and right down here was fire coals and a few brick, and a piece of iron or two, and a few pieces of barrels. . . That is where I saw the smoke. I told Mr. Hogan about that place. . . On Monday night I saw the defendant and Mr. Raley and another white fellow. I saw them at papa's. I was eating supper when this car drove up and somebody hollered, and I came out, and Mr. Raley was the first person I met. Mr. Norris was there. Raley spoke: 'Everything friendly, . . how you making it?' Everything was friendly. He sorter nodded his head this way. . . Mr. Norris was with us. Mr. Raley says: 'The man come over and got that thing to-day.' I says, . . 'I told him to go last night.' Then Mr. Raley and Mr. Norris put in with, 'Have we ever done anything to you; have we ever given you any trouble in any way, shape, form or fashion?' And I says, 'No.' . . They wanted to know how come I turned it up. . . That was on Monday night after I saw this thing on Sunday. In that conversation they told me that the sheriff had torn the still down. . . I saw ten people at that place. I know for certain Mr. Norris was in that crowd. . . I was 150 yards away up on a hill, and it went down a slanting to where the smoke was, and there was a bunch of fellows around there who looked like they were shooting crap on a barrel. . . I did not know none of them down there that jumped in the gully. When I saw them down there I saw Mr. Norris and Mr. Raley and Enoch. They were with that crowd, but whether they jumped in the gully I don't know. . . I did not see any still. . .

The still was located about a mile and a half from Miller's river bridge down the Ogeechee River on a little branch. I know where Norris lives. His house was about a mile and a half from that place. Raley lives up there close to where Norris lives. Some negroes live back this way, but I don't know how far. . . In the conversation I had with them that Monday night they told me that the sheriff . . tore up a still where I saw them on Sunday. . . Norris said he was not there and that he didn't know how you could connect him with it."

Bob Dye, sworn for the State, testified: "I am the father of Alwine Dye. . . Mr. Raley and Mr. Norris came to see my boy at my house on Monday night after that Sunday. . . They said they had come over there to see whether he had told about what he saw, and find out something about it. I asked them what about it if he had told it, and what else was there to it. They said there was no harm, that they wanted to know if he had told what he had seen. . . I told them that I had read where a fellow had run into a thing like that and got beat up about telling it, and . . I did not want any such thing to happen at my house."

The gist of the testimony of G. P. Hogan, sworn for the State, follows: "At that still site I found there, I think, three boxes and two or three or four barrels. There was no still in the furnace. There were live coals in the furnace. I could say from the indications that I did see there on Monday that liquor had been made there on Sunday. . . We found the copper two or three hundred yards from the still. The tracks went off from the still. We got in the bottom and crossed a log, and there were some tracks that led off to the right. We followed them tracks, and we did not go very far until we found a still and the worm. . . The still was about forty-five gallon capacity. The still had been moved from the furnace and hid. . . I found where a car had been parked, and I tracked it to Mr. Raley's, and the tread of the tires of Mr. Raley's car corresponded to the tracks in the woods. At Mr. Raley's I saw these three men, Enoch Harris and John Daniel Norris and Raley. . . The still was on a branch that led into the river. I heard Alwine Dye's description of that place, and that is the description of the place I found the still. On Monday I went to the place in question. I also went to Mr. Raley's, and found Mr. Norris there, and also Enoch. . . In a straight line,

I would say this still was between a mile and a half and a mile and a quarter from Norris' home, but going around the banks of the river it was further—probably two miles. There was another house . . closer to the still than a mile and a half. There was a negro house between three quarters and a mile from the still. . . He lives about half the distance from the still site that Norris did."

We quote the gist of the defendant's statement to the jury: "I don't know anything about the still business. I am not guilty. . . My first knowing about this thing was when Mr. Hogan seen me at Mr. Raley's. That evening Cleon Raley was going to Barnett and asked me to ride with him, and I told him I would. He struck the road and said he believed he would go by and see Mr. Dye. I rode with him, but I said absolutely nothing to Mr. Dye about this business, and I don't know anything about it."

Counsel for the State insists that "presence at the still and flight therefrom was sufficient to justify conviction." It will be observed that the witness Alwine Dye saw no still, or whisky, or "beer," and that, while he first swore that the defendant jumped in a ditch, he later testified that he could not tell whether or not the defendant did jump in the ditch. It appears also from this witness's testimony that, besides the defendant, he saw seven negroes and two white men near where smoke was rising, and that a crap game was in progress.

The witness Hogan, who did not appear upon the scene until the following day, found a dismantled still, with live coals in the furnace, but located the various parts of the outfit near by. He does not swear that he found any whisky or "beer." So far as the record shows, his conclusion that "liquor had been made there on Sunday" was hardly sustained by facts. It certainly can not be said that the defendant said or did anything during the conversation that occurred when he and the other two men called to see Alwine Dye that would amount to a confession by the defendant. Indeed, it does not clearly appear that the defendant said anything on that occasion that could be fairly called an incriminatory admission.

See, in connection with this case, the case of *Burchfield* v. *State,* 40 *Ga. App.* 506 (150 S. E. 459), where it appears that the defendant and two other persons "were sitting right at the still," which

was in full operation and running whisky, and that the defendant tried to "walk away" and the witness "pulled him back." The writer in that case quoted from *Griggs* v. *State,* 25 *Ga. App.* 242 (102 S. E. 877), as follows: "The most that can be said of it is that it shows presence and flight;" and from *Griffin* v. *State,* 2 *Ga. App.* 543 (2) (58 S. E. 781), this statement: "Neither presence nor flight nor both together, without more, is conclusive of guilt." In the *Burchfield* case this court said: "Without flight having been established by the evidence, the conviction of the defendant was unauthorized." It would be useless to cite the numerous cases referring to the "presence and flight" of a defendant found at a whisky still. Suffice it to say that convictions in such cases have been sustained only where the defendant was found at a still *in active operation,* and where *he fled* upon being discovered there, and failed to make an explanation of his flight that was satisfactory to the jury. See *Yonce* v. *State,* 154 *Ga.* 419 (114 S. E. 325); *Lindsay* v. *State,* 32 *Ga. App.* 74 (122 S. E. 649); *Flint* v. *State,* 29 *Ga. App.* 222 (114 S. E. 585); *Chapman* v. *State,* 38 *Ga. App.* 345 (143 S. E. 923).

We will conclude this discussion by stating in the language of the decision in *Bundrick* v. *State,* 41 *Ga. App.* 377 (153 S. E. 77), that "the evidence does not show that the accused had any interest in the still, that it was on land owned or controlled by him, or even that he had on his working clothes," and by holding that the evidence does not exclude every other reasonable hypothesis than that of the guilt of the accused. Those special grounds that are sufficiently complete to be considered by this court present no question that is novel or interesting, and none of them discloses any reversible error, and the judgment overruling the motion for a new trial is erroneous for the sole reason that the evidence fails to support the verdict.

*Judgment reversed. Broyles, C. J., concurs. Bloodworth, J., absent on account of illness.*