### 29741.   AIKEN *v.* SMITH.

DECIDED DECEMBER 4, 1942.

*G. Seals Aiken,* for plaintiff.

*Sidney T. Schell, T. E. Whitaker,* for defendant.

SUTTON, J.   Dr. W. S. Aiken obtained in the civil court of Fulton County, in May, 1935, a judgment against T. A. Smith for $910 principal, interest and costs.   On May 5, 1941, June 9, 1941, July 14, 1941, and August 7, 1941, he caused summons of garnishment to be served on H. H. Smith, doing business as Smith Paint & Lacquer Company.   The garnishee answered in each case, on June 2, 1941, July 3, 1941, August 4, 1941, and September 2, 1941, that he was not indebted in any sum to the debtor.   On October 7, 1941, the garnishee amended his answer of June 2, 1941, in which he had set up that the debtor owed him $586.31 and in which he set forth in detail part of the items making up the alleged total of indebtedness, the amendment giving further details of the indebtedness.   To each of the first three answers the garnishing creditor filed a traverse.   The issues thus formed came on to be heard before the judge of the civil court of Fulton County, without the aid of a jury, on June 15, 1942, and after hearing evidence and argument he rendered judgments against the traverses.   The exception here is to the judgment of the trial judge in overruling the garnishing creditor's motion for new trial.

The evidence showed the following facts:  T. A. Smith, the debtor and brother of the garnishee, was in December, 1940, living in Tampa, Florida, and had not been employed for several years and was addicted to the use of liquor.   The garnishee had regarded his case as hopeless, but in December, 1940, on a visit to Tampa decided that he would endeavor to bring about the regeneration of the brother.   At that time the brother, according to the garnishee, was indebted to him, and it was agreed between the two that T. A. Smith would work at the garnishee's place of business in Atlanta, and out of his salary discharge in periodical payments the indebtedness due and to become due to the garnishee.   In Atlanta the garnishee had the defendant brother treated for his drink habit by an institution known as the "White Cross," and other expenses were incurred on behalf of the debtor.   The salary of the debtor, who entered the employ of the garnishee in January, 1941, was $20 per week until about April 23, 1941, when, because of good

conduct and service at the garnishee's place of business, it was increased to $25 per week. He was given board and lodging at the home of the garnishee, being informed that such aid would be furnished as long as he conducted himself properly and worked, and it was not shown that this assistance was to be a part of his compensation, but it apparently was a mere gratuity without reference to the place of employment of the debtor. The weekly salary payments were made to the brother without any deductions being made for application to his account, but from time to time, as shown by a memorandum made by the garnishee and in evidence, the brother made payments in cash between May 9, 1941, and August 8, 1941, in the total sum of $137. These payments were not entered on the books of the garnishee, and his explanation was that it was his intention to take such payments into account at the end of the year in winding up the year's business, taking inventory, etc. Both he and his wife, who kept the books, testified as to the salary being paid weekly, with the exception of two weeks when the debtor was absent, and she testified that such payments on account were not entered on the books but she knew that her husband was receiving payments from time to time and she made no entries because she was never instructed to do so. A ledger sheet of the account was introduced in evidence, showing various charges against the debtor, and there was other evidence of indebtedness, not on the books, in the form of receipted bills or canceled paid checks for the account of the debtor. Summarizing these documents and records the following appears: In December, 1940, the garnishee paid to the White Cross for treating his brother a total of $245; on January 13, 1941, he advanced the brother $2; on January 10, 1941, he paid a hospital bill of $43.40 evidenced by a canceled paid check; on April 4, 1941, he paid a doctor $39, evidenced by a canceled paid check; on January 13, 1941, he paid a hospital bill of $35.90, evidenced by a canceled paid check; on December 20, 1940, he paid a doctor $15, evidenced by a canceled paid check; all of which expenditures on behalf of the debtor amounted to $380.30.

In addition to the above, the garnishee testified that the brother owed him for $155 worth of paint which he lost or allowed to be confiscated in connection with a drunken spree when using the garnishee's automobile in June, 1936, while in his employ at that

time, and that the expense of repairing the automobile which was wrecked was $55, as to both of which items he testified that the brother recognized his liability and agreed to pay off eventually. These two items, when taken with the above mentioned charges, make a total of $590.30 against the debtor, existing at the time the first summons of garnishment was served on May 5, 1941. From that date to June 2, 1941, when the answer to the first garnishment was made, the debtor was paid a total salary of $100, and in small payments he returned a total of $48 to the garnishee. It follows that at the time of the answer on June 2, 1941, the garnishee owed the debtor nothing but was due from him the sum of $542.30. From June 9, 1941, when the second garnishment was served, until July 3, 1941, when the answer was made, the debtor was paid a total of $125 in salary and in small payments returned to the garnishee a total of $29. Hence, at the time of the answer of July 3, 1941, the garnishee owed the defendant nothing but was due from him the sum of $513.30. From July 14, 1941, when the third garnishment was served, to August 4, 1941, when the answer was made, the debtor was paid in salary $100 and in that period returned to the garnishee $50. Accordingly, at the time of the answer of August 4, 1941, the garnishee owed the debtor nothing but was due from him $463.30. As to each of the issues formed by the traverse to the answer the court·was, therefore, authorized to find in favor of the garnishee.

While after service of garnishment a garnishee pays the debtor of a garnishing creditor at his peril, the payment of salary in the present instance in no way affected the merits of the case, because, even if such payments had been withheld or added to the total of the sums paid by the debtor to the garnishee in the respective periods, the total in any of the periods would not have been sufficient to offset the amount due the garnishee as hereinbefore determined. At no date of the summons of garnishment or answer could the debtor, T. A. Smith, have recovered anything from the garnishee. "A garnishee, if the debtor be indebted to him, has a lien on funds coming into his hands, or future indebtedness to the debtor on his part, superior to that of the plaintiff in garnishment. He is entitled to pay himself before he is required to collect for the benefit of others; and this applies to any past indebtedness due him by the defendant." *Mutual Reserve Insurance Co.* v.

*Fowler,* 2 *Ga. App.* 537 (2) (59 S. E. 469); *First National Bank* v. *Ramsey-Wheeler Co.,* 17 *Ga. App.* 442 (87 S. E. 679). Of course, "The situation which the garnishing plaintiff occupies in respect to the garnishee can ·be no better than that which the defendant himself occupies in respect to the garnishee. If the defendant himself, suing the garnishee, ·could not get a judgment against him, the garnishing plaintiff can not get a judgment against the garnishee. The creditor may stand in his debtor's shoes by means of garnishment, but he gains no additional privileges." · *Singer Machine Co.* v. *Southern Grocery Co.,* 2 *Ga. App.* 545 (1) (59 S. E. 473). See also *Holmes* v. *Pope,* 1 *Ga. App.* 338 (2) (58 S. E. 281), and cit.

But the plaintiff in error contends that, in omitting from his answer the fact that he had received certain payments from the debtor within the respective periods, the garnishee swore falsely, and in his testimony admitted that he had sworn falsely, in that he stated that it was his own business why he did not list them, and that this being true and the garnishee not being corroborated in his testimony he was unworthy of belief, and, furthermore, that the entire testimony shows a scheme and device to defraud the garnishing creditor. It is true that the garnishee did not include, in his explanation of why the brother was indebted to him, the payments which had been made from time to time within the respective periods above referred to, but he swore that he did not owe the brother any sum, and, according to the evidence, this was true, even if the amount of such payments by the brother had been taken into account in the answer. The garnishee did not swear that the brother had not made any payments, and his answer that it was his own business why he did not list any payments was not equivalent to an admission that he had sworn falsely. Under the state of the account at the date of the service of summons or of the answer, the garnishee had the right to appropriate to his own use whatever payments had been made, and this would be true as long as the charges against the brother were in excess of such payments on account by the brother. The fact of indebtedness to the garnishee, in such a case, would not be rendered untrue by the mere fact that the brother made payments insufficient in amount to offset the debit balance against him. The issue formed by the traverse was whether or not it was true, as set forth in the

answer of the garnishee that he was not indebted to the brother, and under the evidence the judge was authorized to find against the traverse. The testimony of the garnishee, as to why he did not list any payments made by the brother, that it was his own business, did not, as before stated, amount to an admission that he had sworn falsely, and, in the absence of a jury, it was for the judge to determine whether he had wilfully and knowingly falsely omitted such credits from his answer and should therefore be discredited entirely unless corroborated by circumstances or other unimpeached evidence. *Sutton* v. *State,* 18 *Ga. App.* 28 (3) (88 S. E. 744).

A scheme and device to defraud the garnishing creditor is not shown merely because the garnishee here contracted with the debtor to enter the employ of the garnishee and from his salary make payments to reduce an outstanding indebtedness. As was said in the *Fowler* case, supra: "Under the evidence in this case the garnishee never did *become indebted* and no debt accrued between the service of the summons and the date of the answer. It is unnecessary for us to discuss the fact that Davis drew more from the company than he paid on his indebtedness. Such a modus operandi might be 'an arrangement' between the defendant and the garnishee. If so, it could not be allowed to defeat the garnishment. But in this case the fact that it was such an 'arrangement' as is referred to in the act was not shown, because, if Davis's whole earnings for the period between the service of the summons of garnishment and the date of the answer be applied to the payment of the indebtedness existing prior to the garnishment, and the amounts drawn out by him had likewise been deducted and used to diminish his indebtedness instead of to increase it, the evidence still shows him to be in the debt of the insurance company and therefore no indebtedness on the part of the garnishee to Davis has *accrued so as to* be subject to the lien,—the garnishee has not become indebted to *Davis.* There was, therefore, no competent evidence to sustain the verdict of the jury who found that the company had become indebted to Davis." As ruled in the fourth headnote in that case: "The purpose of the act of 1901 (Acts 1901, p. 55 [Code § 46-203]) was to reach indebtedness accruing between the service of the summons of garnishment and the answer, and to prevent evasions and subterfuges on the part of garnishees;

but it does not intend to violate existing contracts or restrain the right to contract." See also *Hartsfield Co.* v. *Zakas Bakery,* 50 *Ga. App.* 284 (2) (177 S. E. 825).

A special ground of the motion for new trial complains that the court erred in refusing to allow the garnishee to answer a question asked by counsel for the plaintiff in garnishment as to whether or not the garnishee's reason in employing T. A. Smith without a definite agreement as to the amount of salary was to prevent creditors from catching any funds due him by the garnishee, it being contended that the question was relevant to show such a conspiracy. Inasmuch as there was sufficient evidence to authorize the court to find that T. A. Smith was in fact indebted to the garnishee before entering his employ, and the garnishee had the right to contract for his services as shown by the authorities hereinbefore discussed, the only issue before the court under the traverses to the answers of the garnishee was whether or not, at the time of service of each summons of garnishment or of the respective answers, the garnishee had become indebted to the brother, and the court correctly so ruled.

*Judgment affirmed. Stephens, P. J., concurs. Felton, J., dissents.*